No. 10334. *

EDWARD CONERY, JR., ET AL., VS. THE NEW ORLEANS WATER WORKS COMPANY ET ALS. ·

Act No. 56, of 1884, does not conflict with any article of the Constitution of the State. Ordinance 909 passed by the city in persuance of said act is a valid ordinance and the contract made between the City of New Orleans and the Water Works Company is a legal contract.

There is but one object embraced in the title of the act, and all the subdivisions of the title relate to and are intimately connected with the principal object expressed in the title. And as all of the sections of the act relate and are german to the object expressed in the title, the act does not conflict with Art. 29 of the Constitution. It does not conflict with Articles 45, 46 and 234 and 57, as the act does not amend the charter of the Water Works Company or grant any extra compensation to the Water Works Company.

The City of New Orleans had the power to contract for a water supply under the provisions of her charter, and having this power, to contract the price, the kind of water and the amount are matters of legislative discretion vested in the City Council, and when the city confines herself within the limits of her power to contract, the discretion exercised by the City Council will not be inquired into by the courts in the absence of fraud; and corrupt and extravagant legislation, which are beyond the legitimate object and purpose of municipal government.

To impose any public burden upon a corporation not warranted by its charter and against its consent violates both the State and Federal Constitutions.

A judicial decree interpreting a contract authorized by legislative will, can not prevent the legislature from further legislation, authorizing the parties to alter or amend their contract, or to annul the existing and make a new and a different contract.

---

*This case is pending before the Supreme Court of the United States on a writ of error.

Conery, Jr. et al. vs. Water Works Company et als.

APPEAL from the Civil District Court, for the Parish of Orleans.
*Monroe*, J.

———

*E. H. Farrar, R. H. Browne, E. D. White* and *Chas. E. Schmidt* for
Plaintiff's and Appellees.

1st.　The only issue in this case is the validity of the contract, attacked, upon the theory of
law and fact that such contract is based solely on the provisions of Act 56 of 1884.

2d.　The Company having elected to deny that they have ever accepted that Act, the contro-
versy is ended.

3d.　The other issue made by the company, that the contract attacked is valid, independently
of the existence of Act 56, cannot arise in this case :

(*a*).　Because both parties to the contract, having based it solely upon Act 56, are estopped to
deny, after litigation has arisen, that it is not based solely on Act 56.　Railway Co. vs.
McCarthy, 96 U. S. 267.

(*b*).　Because it does not appear that the City would have entered into any such contract upon
any other basis.

(*c*).　Because the Water Works Company, having promoted the act and ordinance, and hav-
ing induced the City by its conduct and representations to enter into the contract and to
change her position to her detriment, is estopped to deny that the contract was not based
solely upon the act.　Picard vs. Sears, 6th Ad. and E. 475 ; 16 Wallace, 1 ; 33 Penn. St. 309.

4th.　If Act 56 is immaterial to the validity of the contract attacked, the relations of the
parties are to be considered under the supposition that no such act was ever passed.

5th.　In this view of the case, the contract relations between the City and the Water Works as
of that date preclude the possibility of the existence of any power or right in the City to
make such a contract.

(*a*),　Because the Legislature had already made a contract for her for the same water supply
for the same period, and this contract had been interpreted by this court, and the inter-
pretation had acquired the authority of the thing adjudged ; and she had no power,
express or implied, to override, substitute, amend, or depart from the provisions of the
legislative contract made for her.　Dillon on Mun. Corp., 3d Ed., Sec. 329.

(*b*).　Because such a contract under such circumstances is a mere donation of the funds of the
taxpayers without any consideration in law or in fact, and in such a wasteful and wanton
abuse of the fiduciary powers granted to the representatives of the people as to amount
to a legal fraud upon the public treasury.

6th.　The argument addressed to the court attacking the correctness of decision in the case
of the City of New Orleans vs. The Water Works Co., 36 Annual, p. 432, is the last
desperate effort to support a desperate case.

7th.　Whether right or wrong, that decision, between the City and the Water Works Com-
pany, is *res adjudicata* in this case, and in any other case that may hereafter arise between
them involving the issues therein necessarily involved and actually decided, to-wit;

(*a*).　That the exemption from municipal taxation granted the Water Works Company, in
consideration of a free water supply to the City, is void.

(*b*).　That said exemption is not the sole cause or consideration of the free water supply.

(*c*).　That the failure of said exemption is only a *partial* and not a *total* failure of considera-
tion.

(*d*).　That it was agreed between the City, the State and the Water Works Company, that the
exemption from taxation and the free water supply should be the exact equivalents of
each other in value, however different they might be arithmetically.

(*e*).　That as a necessary consequence of these findings of law and fact by the court, the City
was entitled to recover her taxes, and the Water Works Company was entitled to recover

for her water supply the exact equivalent agreed on, to-wit: the amount adjudged against her for taxes.

8th. All of the above propositions were affirmed on the one side, denied on the other, were absolutely essential to the solution of the controversy before the court, and were actually stated and decided by the court.

9th. This being so, the judgment in that case is *res adjudicata* in all other cases between the same parties and their privies growing out of the same cause of action, even though the object of the action may be different. Aurora City vs. West, 7 Wall. 96; Cromwell vs County of Sac, 94 U. S. 353; Dorty vs. Brown, 4 Comstock, 71; Outram vs. Morewood, 3 East. 346; Burt vs. Sternburg, 4 Cowen, 559; Bouchard vs. Dias, 3 Denio, 243; Gardner vs. Buckbee, 3 Cowen, 120; Lumber Co. vs. Buchtel, 101 U. S. 638; Gould vs. R. R. Co., 91 U. S. 526; Beloit vs. Morgan, 7 Wall. 623; Merriam vs. Whittemore, 5 Gray, 317; Norton vs. Huxley, 13 Gray, 290; Burlen vs. Shannon. 99 Mass. 203; Tams vs. Lewis, 42 Penn. St. 402; Chamberlain vs Gaillard, 26th Ala. 504; Perkins vs. Walker 19 Vt. 144; Hayes vs. Gudykunst, 11 Penn. St. 221; Peterson vs. Lothrop, 34 Penn. St. 223; Jackson vs. Lodge, 36th Cal. 28; Danaher vs. Prentiss, 22d Wis. 311; Barrs vs. Jackson, 1 Younge & Col. Ch. Cases, 585; Canjolle vs. Ferrié, 13th Wall. 469; Stewart vs. Stebbins, 30 Miss. 66 ; Kingsland vs. Spalding, 3 Bard. Ch. 341; Goodrich vs. City, 5 Wall. 566. Thevenin c. Dufour, Sirey, v. 31, 41; Saint-Léonard c. Bal. J. du P., 1843, vol. 2, 247; Gleizè c. Héritiers Gleizèe, J. du P. 1859, 514; Cass., 13 fév. 1860 (Giudicelli), Sirey, v. 60, 1, 545; Cass 26 août, 1873 (Commune de Chancevigney) Sirey, v. 74, 1, 294; Heroman et al. La. Institute, 34 Ann. 815.

10th. Being *res adjudicata* it has become a vested right, the property of the City of New Orleans, and is beyond the power or reach of any court—even of the court that rendered it—to correct, modify or suspend it. Huyghe vs. Brinkman, 38 Ann. p. 843.

11th. All the taxpaying inhabitants are privies to all judgments rendered for or against the City of New Orleans. They bear the onus and are entitled to the benefit of all such judgments, as the estoppel of *res adjudicata* is necessarily mutual. Parker vs. Scogin, 11 Ann. 629; Xiques vs. Bujac, 7 Ann, 498.

12th. They are, therefore, entitled in a case of this kind, were they are vindicating the public rights, to avail themselves of the plea which the corporation could in any action by or against it lawfully set up.

---

*J. R. Beckwith, H. H. Hall* and *G. A. Breaux,* for Defendants and Appellants :

Every municipal corporation has all the power of administration of local municipal affairs expressly granted in its charter, and all incidental powers necessary to carry such powers into execution and effect and operation. Dillon on Mun. Cor., third edition, sec. 94, vol. 1, 121; Railroad vs. Evansville, 18 Wis. 83; Slack vs. Railroad Co., B. Mon. 1; Birdgeport vs. Railroad Co., 15 Conn. 475, 501; Cases cited in note, third edition, Dillon on Mun, Cor., vol. 1, p. 121.

A municipal corporation, with power to sue and be sued, has authority to settle its contentions by compromise. This right also grows out of its authority to create debts and incur liabilities. Dillon on Mun. Corp., sec. 398; Bean vs. Jay, 23 Maine, 117, 121; Meech vs. Buffalo, 29 N.Y. 198; Baileyville vs. Lowell, 20 Maine, 178; Nelson vs. Milford, 7 Pick. 18; Augusta vs. Leadbeater, 16 Maine, 45; People vs. Supervisors, 27 Cal. 655; People vs. Coon, 25 Cal. 648; Melville vs. Dixfield, 30 Maine, 157; Petersburg vs. Maffin, 14 Ill. 193; Taylor on Corp. 137; Oglesby vs. Attrill, 105 U. S. 605; St. Louis vs. United States, 92 U. S. 462; Oliver vs. Worcester, 102 Mass. 489; Board of Liquidation vs. Railroad Co., 109 U. S. 221; Buffalo vs. Bettinger, 76 N. Y. 393.

Conery, Jr. et al. vs. Water Works Company et als. ·

A municipal corporation, having the powers conferred on it in the form and to the extent conferred on the city of New Orleans by its charter of 1882, particularly in the seventh section thereof, and also having a general authority to make all contracts necessary for the health, safety and welfare of the city, *may contract for waterworks.* Cabot vs. Rome, 28 Ga. 50; Wells vs. Atlanta, 43 Ga. 67; Livingston vs. Pippin, 31 Ala, 542; City of Vincennes vs. Callender, 86 Ind. 484.

To authorize a taxpayer to stand as plaintiff in a suit having for its object the rescission of a contract made by a municipal corporation, the plaintiff must not only show that he is a taxpayer, but set forth and disclose in his petition a state of facts which, if true, render the contract assailed absolutely *void,* not simply *voidable.* People vs. Mayor, etc., of Brooklyn, 4 Comst. 419; Dillon on M. C., sec. 55; Spaulding vs. Lowell, 23 Pick. 71; Hodge vs. Buffalo, 2 Denio, 110; Smith vs. Madison 7 Ind. 86; Kyle vs. Malin, 7 Ind. 34–37; Livingston vs. Pippin, 31 Ala. 515; Mayor vs. Cabot, 28 Ga. Rep. 50: Wells vs. Atlanta, 43 Ga. Rep. 76: City of Vincennes vs. Callender, 86 Ind. 494; Valparaiso vs. Gardner, 97 Ind. 2; Jones vs. Richmond, 18 Grattan. Va. 517; Smith vs. Richmond, 15 Wall. 429; Willard vs. Newburyport, 12 Pick. 229; Kelsey vs. King. 1 Trans. App. 133.

Where there is a corporate body in existence with municipal and political powers, the municipal name and authority is adequate to perform all functions relating to enforcing the ordinances and maintaining the rights of the corporation. There must be inability or refusal to perform that duty and functions before the duty can be either assumed or performed by volunteers. Russell vs. Wakefield Waterworks Co., L. R. 20 Eq. 479; Gray vs. Lewis. L. R. 8 Ch. 1035, Hersee vs. Vesey, 24 Maine 9; Lafmo vs. Deems, 81 N. Y. 507.

To authorize courts to reverse the legislative decision manifested by the passage of an act as to what is a city purpose, the case must be one conclusively showing an underlying purpose different from municipal use and convenience. Re Appleton vs. Mayor. 90 N. Y. 569; Brooklyn Bridge Case—People vs. Kelley, 76 N. Y. 475; Matter of Lands in the Town of Flatbush, 60 N. Y. 398.

Where the law or charter confers upon the City Council or local Legislative power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them while acting within the scope of their authority, cannot be controlled by the courts. Dillon on Mun. Corp., third edition, vol. 1, 121; Baker vs. Boston, 12 Pick. 184; Honey vs. Mayo, 41 Maine 322; Parks vs. Boston, 8 Pick. 243; Fay, *ex parte,* 15 Pick. 243; Donnelly vs. Cabaniss, 52 Ga. 211; Sheridan vs. Colvin, 78 Ill. 327; Motz vs. Detroit, 18 Mich. 495-516; Bond vs. Mayor of Newark, 18 N. J. Eq. Rep. 376; Rittenhouse vs Mayor of Baltimore, 25 Md. 336; Jones vs. Richmond, 18 Gratt. 917.

The motives or business prudence of any body vested with legislative capacity, cannot be enquired into by the courts. Dillon on Mun. Corp., third edition, vol. 1, p. 326; Baird vs. New York, 96 N. Y. 567, 580, 581; People vs. Albertson, 55 N. Y. 50; People vs. Draper, 55 N. Y. 532; Mayor vs. Bank, 111 N. Y. 446-458; Wells vs. Atlanta, 43 Ga. 67; *Ex parte* Delaney, 43 Cal. 478,

A municipal corporation cannot relieve itself of its contract obligations, or refuse to perform a contract made by its officers or agents, because such officers or agents have been unfaithful in other matters. Baird vs. Mayor of New York, 96 N. Y. 567 (one of the Tweed cases).

Any consideration that will make a valuable consideration for a contract between idividuals, will constitute a valid consideration in a contract by or with a municipal corporation. A moral obligation alone is sufficient to support a promise of a municipal corporation, if sufficient to support a promise, if the same state of things existed between individuals. Gilford vs. Supervisors, 13 N. Y. (3 Kern) 149; Same case, 34 Wend. and 18 Barb., 615; Dillon on Mun. Cor., sec. 44; Brewster vs Syracuse. 19 N. Y. 116; People vs. Mayor, etc., of Brooklyn, 4 Comst. 419; Thomas vs Leland, 24 Wend. 65; Shelby County vs. Railroad

Company, 5 Bush. (Ky.) 225; Philadelphia vs. Field, 58 Pa. St. 320; Cooly on Constitutional Limitations, 380, 491; Blanding vs. Burr, 13 Cal. 343; People vs. Onondaga, 16 Mich. 254; Lycoming vs. Union, 15 Pa. St. 166; Nelson vs. Milford, 7 Pick. 18; Pike vs. Middleton, 12 N. H. 281; Briggs vs. Whipple, 6 Vt. 95; Mayor vs. Tenth National Bank, 111 N. Y. 446, 449; Brown vs. Mayor, 63 N. Y. 164.

All of the guarantees and compacts contained in the charter of the Waterworks Company are guaranteed against impairment and destruction by the Federal constitution. New Orleans Waterworks vs. Rivers, 115 U. S. 674; New Orleans vs. St. Tammany, 120 U. S. 64; New Orleans Gas Co. vs. N. O. L. & P. Co., 115 U. S. 650; Fiske vs. Police Jury, 111 U. S. 716; Louisiana vs Pilsbury, 105 U. S. 278; Gordon vs. Appeal Court, 3 How. 133; McGehee vs. Mathis, 4 Wall. 143; Dodge vs. Wolsey, 18 How. 331; St. Anna Asylum, 105 U. S. 362; Louisiana vs. St. Martin, 111 U. S. 716; Home of the Friendless vs. Rouse, 8 Wall. 430.

An estoppel is an admission, or something which the law treats as equivalent to an admission, of a high and conclusive nature—so high and so conclusive that the party whom it affects is not permitted to aver against it, or offer evidence to controvert it, and binds not only the party, but all the privies. 2 Smith's Leading Cases, 580, and notes on Duchess of Kingston's case; 1 Herman on Estop., 150.

Privies bound by estoppel are, first, privies in blood; second, privies in law; third, privies by estate. The taxpayers, plaintiffs in this suit, are privies both in law and estate. They are privies *quoad* the city of New Orleans, because they are atoms of the corporation, whose officers are their special agents in all matters of municipal administration; privies in estate, in that the alleged remedial action sought by them is simply alleged pecuniary advantage to and for the city of New Orleans as a political corporation aggregate. 2 Smith's Leading Cases (Note on Duchess of Kingston's case). 587–589, et seq.; 1 Herman on Estoppel, ed. 1886, 149, et seq.; 1 Dillon on Mun. Cor., p. 116 and sec. 90, 91.

If a party to a contract desires to rescind on the ground of fraud or mistake, he must, upon the discovery of the fact, at once announce his purpose, and adhere to it. If he is silent, and treats the contract as valid, he waives his objections, and is as conclusively bound by the contract as if the mistake or fraud had not occurred. *He is estopped by election.*

If he has the right to repudiate or affirm the transaction, and affirms it, he cannot afterwards resort to his right of repudiation. Herman on Estoppel, ed. 1886 vol. 2 p. 1171, 1172; Grymes vs. Saunders, 93 U. S. 55; Thomas vs. Barstow. 48 N. Y. 200; Flint vs. Wood, 9 Hare 622; Jennings vs. Broughton, 5 De G. M. and G. 139; Loyd vs. Brewster, 4 Paige, 537; Railroad Co. vs. Rowe, 24 Wend. 74; Minturn vs. Main, 7 N. Y. 220; Wroten vs. Armat, 31 Gratt, 228; Frinck vs. Hollander, 35 Ann. 582; Trustees vs. Sterrett, 31 Ann. 719; O'Keefe vs. Handy, 31 Ann. 832; Lippmins vs. McCranie, 30 La. Ann. 1251; Byrne vs. National Bank, 31 Ann. 81; Insurance Company vs. DeBlanc, 31 Ann. 100; School Directors vs. Hernandez, 31 Ann. 158; Levee Company vs. State, 31 Ann. 250; Hardee vs. Turner, 31 Ann. 469; Hood vs. Frelsen, 31 Ann. 577; In Re. Mechanics' Society, 31 Ann. 627; Succession of Fluker, 32 Ann. 292; Hart vs. Huguet, 33 Ann. 362; Bank vs. Wagner, 33 Ann. 732; Dickson vs. Dickson, 33 Ann. 1370; Succession of Hoss, 33 Ann. 1256; Maguire vs. Maguire, 40 Ann. 578.

A party to a suit cannot, in judicial proceedings, allege one state of facts as a cause of action or defence, and in the same suit, or in a suit about the same controversy or thing, between the same parties, set up and plead a state of facts so contrary and inconsistent, that, if one plea or allegation is true, the other is necessarily false. Walker vs. Walker, 37 Ann. 107; Gaudet vs. Gauthreaux, 40 Ann. 186; State vs. Judges, etc., 34 Ann. 1220; Brandon vs. Allen, 28 Ann. 60; State vs. Board of Liquidation, 28 Ann. 121; Bender vs. Belknap, 23 Ann. 764; Serritt vs. Labouse, 15 Ann. 186; Osborne vs. Legras, 29 Ann. 291.

The doctrine of estoppel applies to the State and municipal corporations, as well as to private citizens or individuals. State vs. Ober, 34 Ann. 559; State vs. Taylor, 28 Ann. 460; Moore vs. New Orleans, 32 Ann. 726.

*Carleton Hunt,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney for the City of New Orleans, Defendant and Appellant:

The City of New Orleans will not be held responsible for the errors of its agents in pleading or defending different suits. Millaudon vs. The First Municipality of New Orleans 1 Ann. 215; Delabigarre vs. Second Municipality, 3 Ann. 235, 236; Brown vs. Police Jury, 4 Ann. 189; Benham vs. Parish of Carroll, 28 Ann. 343.

When an act is *ultra vires* on the part of the corporation of the City of New Orleans, no act of the city will have the effect to estop it to allege its want of power. Bigelow on Estoppel, 4 Edition, page 530; Dillon on Municipal Corporation, vol. 1, page 450, section 457; South Ottawa vs. Perkins, 94 U. S. page 261; Anthony vs. County of Jasper 101 U. S. 697.

Act No. 33 of 1877, known as the charter of the New Orleans Water Works Company, as judicially interpreted by the Supreme Court in City of New Orleans vs. New Orleans Water Works Company, 36 Ann. 482, is binding upon the company and the city. Act 56 of 1884, is unconstitutional, null and void, and ordinance No. 909, C. S. and the contract thereunder of Oct. 3, 1884, purporting to be in pursuance of Act 56 of 1884, are in fraud of the rights of the city, and are likewise null and void.

---

The opinion of the Court was delivered by

McENERY, J. Ed. Conery and other taxpayers, residents of the City of New Orleans, brought suit against the New Orleans Water Works Company and the City of New Orleans, to have the existing contract for the supply of water to the corporation, to be declared a nullity.

They aver they are taxpayers of New Orleans in amounts aggregating ten thousand dollars. They recite the history of the present charter, the litigation growing out of the city's attempt to subject the property of the corporation to taxation and the judgment in the case of the City of New Orleans vs. the Water Works Company, reported in 36 Ann. p. 432, and that the Supreme Court interpreted the legislative contract contained in Act. 33, of 1877, which is the charter of said company, and that the Water Works Company had no power to receive from the city any greater amount for a free supply of water than the sum of $11,484 87, allowed the company on its reconventional demand in that suit, as an equivalent.

They allege the city had no authority to make the contract, that the contract is *ultra vires,* null and void, illegal and unconstitutional.

They also aver that after the termination of the suit of New Orleans vs. Water Works Company, the company not satisfied with the judicial construction placed upon its charter, in order to obtain an unjust advantage over the city, procured the enactment of Act. 56, of 1884, and that pretending to act under this statute the City Council of New Orleans passed ordinance, No. 909, authorizing the Mayor of said city to enter into a contract with the Water Works Company, and that said ordinance 909, and the contract made in pursuance thereof were not author-

ized by the terms of Act 56, of 1884, and that the legislature never intended that the contract relations as interpreted by the Supreme Court should be changed or modified unless for the purpose of furnishing the city with clear and filtered water; that if said act contemplated a contract between the City of New Orlans and the Water Works Company as to the value of the water to be supplied, then said act is unconstitutional and void and conflicts with Articles 45, 57, 234 and 46 of the Constitution of the State.

The petition prays for an injunction.

The City of New Orleans filed an exception to the petition (1) that the plaintiff's petition disclosed no legal cause of action, (2) that the plaintiff's disclosed no interest or authority to institute and maintain the suit and prayed that it be dismissed. Some years after this exception was filed on a change of the city administration, the attorney of the city appeared and joined the plaintiffs in their suit. Complaint is made of this change of front on the part of the city and it is alleged that the city is estopped from filing a contrary plea. While this may be true as to the city in its corporate or political capacity, it can not operate against the plaintiffs taxpayers, who allege the nullity of the contract.

The company also filed an exception alleging several grounds for the dismissal of the suit, some of which are identical with the exception filed by the city. But they are so intimately associated with the merits of the case that we will not disturb the order of the District Judge in overruling the exceptions.

The Water Works Company filed an answer pleading a general denial, and also a supplemental answer alleging other matter, all of which, however, is summed up in maintaining the integrity of the contract, the authority of the city to make the contract, independent of Act 56, of 1884, and the constitutionality of said act, and the validity of ordinance 909, and the contract made in pursuance thereof.

There was a judgment in favor of the plaintiffs and the Water Works Company has appealed.

The City of New Orleans purchased from the Commercial Bank, the Water Works' property and franchises. The city undertook to supply the inhabitants of the city, and her own wants with water. The experiment was disastrous, and her experiment was that of all great municipal corporations which have attempted this scheme—an insufficient supply of water, debt, through extravagant and bad management, and complaints from her citizens. To rid herself of this incumbrance the city appealed to the legislature for relief, and at her instance and in answer to her prayer the present company was organized under the direction of her

officers in pursuance of Act 33 E. S., of 1877.  Section 11 of that act is as follows :

"*Be it further enacted, etc,,* That the City of New Orleans shall be allowed to use water from the pipes and plugs of said company now laid, or hereafter to be laid, free of any charge, for the extinguishment of fires, cleansing of the streets, and for the use of all public buildings, public markets and charitable institutions, and that the said company shall place, free of any charge, whatever, two hydrants of the most approved construction in front of each square, where a main pipe shall be laid at a suitable distance from each other, from which a sufficient quantity of water may be conveniently drawn for the extinguishment of fires, for watering the streets and cleansing the gutters, and for any other public purpose; that on the squares which do not front on the river the hydrants shall be placed on opposite sides of the streets, at an equal distance from each other and the corners.  It shall be the duty of the said company, whenever main pipes shall be laid, to supply water for all the purposes herein mentioned at all times during the continuance of this charter; and in consideration thereof the franchises and property of said New Orleans Water Works Company, used in accordance with this act, shall be exempt from taxation—State, municipal and parochial."

For several years the company supplied the city with water, and no tax was demanded from the company.  In 1881 the city brought suit against the company for taxes assessed against the company, amounting to $11,484 87.

The company claimed that if it had to pay the tax the city was bound to pay for the amount of water supplied under the above section, and reconvened for the sum of $40,281 87.

There was judgment for the taxes due the city and in favor of the company on the reconventional demand for the exact amount of the taxes, as equivalent for the water already furnished the city.  City of New Orleans. vs. Water Works Company, 36 Ann. p. 432.

It is contended by plaintiffs that the decree in this case fixed and determined the respective obligations of the city of New Orleans and the Waterworks Company, and regulated the future supply of water to the city, and the amount which the city should pay annually for its supply of water, the amount of taxes assessed against the company as fixed in said suit.  In this case the sole question was whether or not the property of the company was exempt from taxation, and it involved the determination whether or not section 11 of Act 33 of 1877 was void, as being in conflict with the constitution of 1868.

Under the issues presented the court could not interpret the legislative contract or charter of the company in its entirety, because the only question was as to the validity of one section of the act. It found, up to the date of the suit, an executed contract to deal with, the consideration of which was illegal. It declared the illegality of the consideration, and ordered the amount paid on account of it, to be returned to the party who had paid his part of the obligation.

The contract with the city was that for furnishing water without specifying the amount, the city would not collect taxes from the company. The company furnished the water, and the city refused to allow the tax. The judgment annulled the contract and, returned to the Water Works Company the value of the water which it had furnished, and which had been fixed in the contract annulled at $11,484 87, as the only consideration for exemption from city taxes.

To say that the decision in that case regulated the contract of the parties in the future, as to the price of the water to be furnished by the Water Works Company, would be to maintain that this court has made a contract for the parties which they never intended, and which is not warranted by any provisions in the Water Works Company's charter.

The contract between the city and the Waterworks Company was made directly by the State at the solicitation of the city. The State withdrew the privilege of exemption from State taxation, which in amount equalled the city taxes. Thus one-half of the consideration was withdrawn by the State without giving any equivalent. To have fixed the price of the water to be furnished at the exact amount allowed the company on its reconventional demand would have been unjust. The company now pays in taxes twice the amount found to be due on the reconventional demand. If the increase has been so great in so short a time, it is reasonable to suppose that the increase will be in greater ratio in the future with the acquisition of additional property by the company, the increase in the value of its present property with the improvement and advancement in the commercial prosperity of the city, which is so confidently predicted and expected. From this it will appear how inequitable it would have been had the decree arbitrarily fixed an amount to be paid by the city for her water supply. It would have been an amount never contemplated by the Legislature when it made the contract for the city with the company.

The effect of the judgment in that case was to destroy and annul section 11 of Act 33 of 1877, E. S. One may look in vain in another paragraph or section of the act for any obligation, express or implied,

which compels the Water Works Company to furnish free water to the city for any franchise or privilege granted by the State.

The Water Works Company was organized at the instance and invitation of the city, and by authority of law. The city cannot impose any obligation upon it contrary to the original grant, without its consent. To impose upon it an onerous duty not contained in its charter, would be a violation of the State and Federal constitution. There is no provision in its charter requiring it to furnish water to the city at any stipulated or regulated price.

In the case of City of New Orleans vs. T. T. Company, 40 Ann. page 42, there was almost a similar state of facts. The city had by grant induced a telephone company to establish an expensive plant, and gave it certain privileges to erect its poles. Afterwards she attempted in certain localities to put a charge upon 600 of defendant's poles at $5 per pole. There was judgment for the company, this court deciding that the company was protected by the constitutional right against the impairment of its contract. In the instant case the city promoted the organization of the Water Works Company, and now seeks to impose upon it an obligation not warranted by its charter. "Obviously," said the court, in the telephone case, "upon the clearest consideration of law and justice, the grant of authority to defendant, when accepted and acted upon, became an irrevocable contract and the city is powerless to set it aside or to interpolate new and more onerous considerations therein. Such has been the well recognized doctrine since the Dartmouth College case, 4 Wheat. 518." In this case we have affirmed the principles resting upon the Dartmouth College case, under which corporations have protected their rights and franchises, the title to and uses of property, safely from any alteration or impairment of their rights, and freedom from increased public burdens. It has become fixed in jurisprudence by repeated affirmations for over sixty-five years, and has become venerable because announced and maintained during this period by the highest judicial tribunal in the land through a succession of judges eminent for learning and purity of character. It will not yield to a persistent local popular clamor, and will not be reversed to satisfy local prejudice and sentiment.

In Binghamton Bridge, 3 Wall. 73, Justice Davis said: "The security of property rests upon it, and every successful enterprise is undertaken in the unshaken belief that it will never be forsaken. A departure from it now would involve dangers to society not to be foreseen, would shock the sense of justice of the country, and weaken, if not destroy, the

respect which has always been felt for the judicial department of the government."

To place the construction upon the decree in the case of the City vs. Water Works Company, 36 Ann. p. 482, contended for by plaintiff, would be to impose an obligation upon the company, not warranted by its charter and would be in violation of both the State and Federal Constitution.

It will be unnecessary to go into the specific details of the existing contract of the city with the Water Works Company. If the city had the power to make the contract, and confined herself within the limits of the power, the quantity and kind of water, the price, etc., were matters within the legislative discretion of the City Council, and unless there is fraud in the execution of the contract, courts will not inquire into this discretion. Dillon on Municipal Corps. Vol. 1, p. 121. Atlantic City Water Works Co. vs Reed, N. Y., 115 Ann. 10. 31 Ala. Rep. 545. 97 Ind. Re. p. 2.

When the Common Council of a municipal corporation is vested with full power over a subject and the mode of the exercise of such power is not limited by the charter it may exercise it in any manner most convenient. (Or.) R. P. 835.

And when a municipality has power under its charter from the legislature to obtain a supply of water for fire and domestic purposes it will not be enjoined from levying a tax to increase its supply when it is alleged to be ample, the extent of the use of such power rests in its discretion and the question of expediency is for the municipality and not for the courts. Lucia vs. Village of Montpelier, (Vt.) Ann. 321.

In the case of Handy et als. vs. City of New Orleans, 39 Ann. 107, this court said:

"The serious charge is after all, that the city in the exercise of the police power has maladministered the public thing respecting the lease of her wharves. Under such circumstances can the petitioners be heard?

"If it could be questioned whether the city in the exercise of the police power which is inherent in all municipal corporations, could build and keep wharves and exact compensation for the use of the facilities desired from [them by those enjoying the same; or convey and transfer unto another that right all discussion on the subject would be at once hushed by the positive and express delegation of authority in that respect made to the city by the sovereign in the charter under which it breathes, moves and acts.

"It is apparent that the city was formally vested by the legislature

with the power of administering by herself or by the agency of others the wharves and landings dedicated to commerce.

"There can be no doubt, then, that what the city has done in this regard in the exercise of the police power can no more be questioned than if the State herself had acted directly."

In approving the doctrine expressed in Municipality vs. Peace, the court said: "the correctness of the ruling and the soundness of the views therein are not questioned, but the material fact on which the same rests must not be lost sight of." The fact referred to by the court was that in the power delegated to the municipality there was no restraint imposed upon its discretionary use and in the language in Municipality vs. Peace: the remedy for this can be had elsewhere than from the judicial power"—in the intelligent exercise of electoral power directed to legislative action to compel the municipality to confine itself with fixed limits.

The case of Handy vs. New Orleans was remanded to be tried on the merits solely, because the corporation of New Orleans had transgressed the mandatory prohibition of its charter.

In the opinion the court said: "Courts in passing upon such matters ought to do so with great caution and due regard to the legal discretion which the sovereign may have vested in such corporations."

The cause for which tax payers can attack the acts of the municipality are succinctly and well defined in this case. Handy et als. vs. New Orleans, 39 Ann. 107.

It is not therefore every contract, nor the details of contracts involving the exercise of vested discretion in the municipality that can be attacked by the tax payers, outside of and independent of the civil corporation.

To authorize such a cause would be to put an end to organized local government and to vest the powers of municipal government in the hands of every irresponsible self-constituted committee, noisy demagogues and professional tax resisters.

Under such a system there could be no progress, improvement or advancement; there would be no well paved streets, and proper sewerage, or the inauguration of effective sanitary methods.

Every act, contract, and every exercise of legal discretion would invariably be brought up for judicial investigation. Delay and disorder would follow in the track of fruitless litigation.

There is no proof in the record of any fraud, or undue advantage obtained by the Water Works Company over the city. The motives which prompted the members of the legislature to pass Act 56, and of the members of the council in passing ordinance, No. 909, are beyond

our power to investigate. Dillon on Municipal Corp., Vol. 1, p. 326, Baird vs. Mayor, 96 N. Y. 567. Villovasso vs. Borthel, 39 Ann. 247.

The only questions presented for consideration, therefore, are "did the City of New Orleans have the power to make the contract, and if she had the power has she exceeded any restraints imposed upon her? And these will involve an inquiry into the power of the city in the exercise of its police powers to make the contract and to the constitutionality of Act 56, of 1884, and the validity of ordinance No. 909, and the legality of the contract.

A municipal corporation possesses and can exercise the following powers: 1. Those granted in express words in its charter. 2. Those necessarily and fairly implied in or incident to the powers expressly granted. 3. Those essential to the declared objects and purposes of the corporation not simply convenient but indispensable. 1 Dill. Mun. Corp., Sec. 89.

Among the declared objects for which the corporation of the City of New Orleans was created were to maintain the health and cleanliness of the city, and to provide for the extinguishment of fires. City charter, Act 20, of 1882, Sec. 7.

A supply of water is essential and indispensable to accomplish these objects.

The limit to the exercise of this power must be that the regulations have reference to the comfort, safety or welfare of society; and these rights of police regulation insured to municipal corporation by their charter may be from time to time, subject to new regulations by the State with a view to the protection of the public safety, morals and health, provided the corporation is not deprived by such new regulations of any of its essential rights and privileges. Cooly Cons. Lim. 148, 718.

In the exercise of this right in their proprietary or private character, as distinguished from their public character in their responsibility to the State as part of the machinery of government, municipal corporations do so, not from consideration of State, but for the private advantage of the particular corporation as a distinct legal personality. And as to the exercise of such powers, and property acquired thereby, and contracts made in reference thereto they are to be considered as *quo ad hoc*, private corporation. Dill. Mun. Corp., Sec. 66.

The City of New Orleans by virtue of her inherent police powers then had a right to contract with reference to a water supply for the public health, and to extinguish fires. And having the right and having made

the contract, her responsibility is to be measured like that of an individual or any civil or business corporation.

The corporation of New Orleans is not, as urged in argument, the ward of the courts. Her contracts can not be annulled, except for the same causes that the contracts of agents and fiduciaries and persons of full age and capacitated may be declared void; that is only when she exceeds her legal authority as trustee of the people, or there is some fraud either direct, or by implication in extravagant and corrupt administration in which the beneficiaries in the contract were either actively or constructively parties, or for some of the causes specified in Handy vs. New Orleans, 39 Ann. 107.

In making the contract now attacked, did the city of New Orleans exceed any limitation placed upon her in the exercise of her police powers? Her charter is silent as to any restriction. In it there is no regulation of any price as to the water to be supplied, nor is there any restriction as to the quantity or the character of the water.

Act 56 of 1884 authorizes the city to contract for either clear or filtered water, and gives the city full discretion as to the price, terms and conditions. The only restriction which could operate upon the contract is that contained in section 15 of the charter of the Water Works Company, which prohibits it from fixing the price of water so that its net proceeds shall exceed ten per cent per annum. It is not alleged or shown that the net proceed of the sale of water exceeds this limit.

This court has said that "where a municipal corporation is authorized to impose a wharfage tax as a compensation for keeping the wharves in a proper condition for the safe and expeditious shipping and landing of merchandise, a court will not undertake to fix a limit to the amount which the municipal authorities may exact for that purpose. The question of the extent to which this right may be exercised is purely administrative." Municipality vs. Pease, 2 Ann. 538.

And in the instant case the city of New Orleans had full power to contract, without restraint as to price, quantity or kind of water, and we are not disposed to question the administrative discretion vested in the city in this respect. 28 Ga. Rep. 50; Wells vs. Atlanta, 43 Ga. 76; Watson vs. Turnbull, 34 Ann. 856; Pickles vs. Dry Dock Company, 38 Ann. 412.

We are of the opinion that, independent of any statutory provision subsequently enacted authorizing the city to contract for her water supply, that she had full and plenary power to do so under the provisions of her charter.

It is alleged, however, in plaintiff's petition, that the power of the

city to make the contract flows from the provisions of Act 56 of 1884, and for certain alleged vices in the act it is unconstitutional and void, and conferred no authority on the city to make the contract.

The unconstitutionality of the act is not to be implied. The court, if possible, will give the statute effect unless it is clearly unconstitutional. Nicholls, Governor, vs. Shakespeare, Mayor, 41 Ann. 156.

It is alleged that the act is unconstitutional and violates act 29, which says every law enacted by the General Assembly shall embrace but one object, and that be expressed in its title.

The act is entitled "An act to provide for the supply of water to the city of New Orleans by the New Orleans Water Works Company in cases of the municipal taxation of said company; to authorize provision to be made for the payment of water supplied and to be supplied; to provide for a clear or filtered supply of water by the New Orleans Waterworks Company, and to enable the city of New Orleans to contract for the same, and to regulate the payment of taxes imposed on said company, contrary to the exemptions given in its charter, and to put into effect section 11 of Act 33 of of 1877, extra session, in instances of refusing or contrary to the exemption thereon."

It is evident that the title of the act embraces but one object, the supply of water to the city of New Orleans, and authorizes the city to make provisions for the payment of the water, and indicates the object and purposes of the act. Every subdivision of the title relates to and is intimately associated with the object of the act. There is no other object expressed or intimated in the title of the act than the main object of supplying the city with water and paying for it.

The sections of the act are directly responsive to the title, and are germain and related to each other.

No section of the act contains any object different from the one object embraced in the title. Edwards vs. Police Jury, 39 Ann. 855.

The act does not violate Art. 57, because it does not grant an extra compensation to the Water Works Company. There was no obligation on the company to supply the city with water at any price, or any quantity.

The city owed the company for no service for which extra compensation was granted. Nor does the act conflict with Art. 46, as the act does not in any way alter or amend the charter of the company. The act authorizes the city to contract and designates the Water Works Company as the party with whom it may enter into the contract. There is no privilege granted to the company. It was not authorized to do any act which it could not already do by its charter. And as the charter

of the company was not amended, renewed, extended or explained by the act it does not conflict with Art. 234. Act. 56, affects the City of New Orleans in authorizing it to do a certain act, to make a contract, with a corporation. The provision in Art. 46, says that the article shall not apply to the City of New Orleans. To place the construction on the act contended for by plaintiff, would deprive every corporation of its vested rights with which the legislature should authorize the city to contract.

It is difficult to see in what manner the act is repugnant to act 57, as there was no debt due by the Water Works Company to the city which was extinguished or released, or which was authorized to be extinguished or released by said act.

City ordinance 909 is entitled " an ordinance to carry out the Act No. 56 of 1884, providing for a future water supply from the New Orleans Water Works Company, to and for the city of New Orleans and certain institutions, and regulating the use of water and the payment therefor.'

The ordinance regulates the amount of the supply of water, and fixes the price at $60 per annum for every fire plug, fire hydrant, and fire well, to continue during the existence of the Water Works Company's charter.

The contract made in pursuance of this ordinance makes it a part of the contract, and is a substantial repetition of it.

Act 56 was permissive in its character, and could not have effect except upon certain conditions which were under the control of the city. It was optional with the city to make a contract of the kind under consideration with the Water Works Company. If the city had the power to contract and executed a contract in pursuance of that power, no individual taxpayers, if the city kept within the extent of her powers, can question the exercise of that power and set aside the action of the City Council authorizing a contract within its legal discretion.

There were no contractual relations between the city and the Water Works Company for supplying the city with water for the purpose of extinguishing fires, cleansing the gutters, and supplying the public schools, markets, and public institutions. The city and the Water Works Company were free from obligation to each other, and each had the capacity to contract for said purposes.

In making the contract to furnish the city with water with the Water Works Company, all the requisites necessary to the validity of a contract were complied with. 1. The legal capacity of the parties to make the contract. 2. Their consent legally given. 3. A certain object which formed the matter of agreement, and 4. A lawful purpose. R. C. C. 1779.

To set aside the contract, then, there must be error of fact or of law, fraud, violence or threats.   R. C. C. 1819.

Not any one of these essentials to the illegality of the crontract is proved.

It is said by counsel for plaintiffs, that "If we had nothing before us but the charter of the city and the charter of the Water Works with the 11th section out, there would be some ground to defend a contract of this kind; but as long as that 11th section is in force (and it will be in force for fifty years) the Legislature has covered by positive enactment the whole subject of a public water supply for this city, and the powers of the city in reference thereto are necessarily in abeyance."

The effect of the judgment in the case of New Orleans vs. Water Works Company, 36 Ann. 432, was to annul and eliminate said section from the charter. It was the section which provided for a supply of water to the city.

No other section provides for said supply of water, and the section expressly says that "it shall be the duty of said company whenever main pipes shall be laid to supply water for all the purposes *herein* mentioned at all times during the continuance of this charter; and in consideration thereof the franchises and property of said New Orleans Water Works Company, used in accordance with this act, shall be exempt from taxation—State, municipal and parochial." There was but one agreement to furnish water for any one consideration in the section, the exemption from taxation, and this by said decreed in the case referred to was declared illegal, and the whole section was annulled. There was not a partial failure of consideration, but a total and entire failure because of its illegality.   R. C. 2031;   City vs. Sugar Shed Co., 35 Ann. p. 551.

The city of New Orleans cannot repudiate the consideration which she was to pay, and claim all the benefits in her favor.

As a general rule a judgment rendered by a court of competent jurisdiction directly upon a point at issue is a bar between the parties. As we have previously stated, the only point at issue in the case of the City vs. Water Works Company, 36 Ann., was the exemption from taxation of the property of the company, the legality of section 11 of the charter, and the amount to be restored to the company, which it had paid on the annulled contract.   Section 11 was the only section of the charter directly at issue.

"But there must be an identity of parties, of capacity, of object and of cause of action.   One of these is lacking here."   Collens vs. Jumel, Auditor, 30 Ann. p. 863.

There is no question presented in this case of the exemption of the Water Works Company from taxation, nor is the amount allowed said company on its reconventional demand at issue. There is no fact which was at issue in the case of City vs. Water Works Company referred to in the instant suit.

The matter at issue in the instant case is as to the authority of the city to make the contract now existing between the city and the Water Works Company, the constitutionality of Act 56 of 1884, and the validity of the contract made in pursuance thereof. It is not doubted if Act 56 is constitutional, and the contract is within the legislative permission, tha it is a valid contract.

If the opinion in the case of New Orleans vs. Water Works Company, 36 Ann. 432, interpreted the legislative contract, in the charter of the company, with the city of New Orleans, this certainly did not prevent the Legislature from authorizing the city to make another contract.

The new contract for a water supply differs in many respects from that which was in section 11 of the company's charter.

The preamble to the act 56, authorizing the city to contract with the Water Works Company recites the reason for its enactment. The State in the exercise of her sovereignty had the undoubted right to act in the matter of the authorization of the city to contract for the purposes embodied in the act. Nicholls, Governor, vs. Shakespeare, Mayor, 41 Ann. 156.

The Legislature having the power to authorize the City Council to enact ordinance 909, the ordinance has the effect of an enactment of the Legislature. Roderick vs. Whitson, 4 N. Y. S. 112. It is difficult to understand in what manner the decree in case of City vs. Water Works Company could estop the Legislature from making such laws as it deemed necessary for the welfare of the city in authorizing her to make a contract.

The city, like a person, having the power to do so, can alter, change, or abrogate her contracts with the consent of the other contracting party.

Therefore, if the city and the Water Works Company's relations were established by said decree, they could, with legislative consent, make another and a different contract.

The city was getting her water supply for the price of the amount of taxes due her by the company. In the exercise of her prerogative she had the contract annulled. That in a new contract she has fixed a different price for her water is a matter which concerns her in the exercise of her administrative functions. It was her own choice, her own

act of administration, and we are not called upon to either commend or condemn the exercise of this discretion.

The city does not donate the price of the water as fixed in the contract to the Water Works Company. The city uses one-third of the entire amount of water pumped by the company. Edwards' Report shows that the value of the water used by the city when she operated the Water Works amounted to $90,000. The pressure was then fifteen feet; now it is fifty feet, consequently there is a greater supply now than when the city used the plant and operated it, and the city pays now $24,000 less than the valuation at that time. It does not appear that the city pays more for her water supply than any other consumer. The fact is she pays less and gets her water at reduced rates.

To an impartial mind there can be no doubt that the city has reaped great advantages from the operation of the Water Works by the present company. A large floating and bonded debt has been extinguished, aggregating one million five hundred and sixteen thousand dollars. The city is saved an annual deficit and owns shares in the company valued at over a quarter of a million of dollars, which it is probable will increase in value, and from which she derives a revenue. She also receives a large and increasing amount from a tax on the property of the company.

These advantages resulting to the city from the charter granted to the company would appear to be sufficient for the exclusive privilege for a term of years of furnishing water to the inhabitants of the city.

The privileges granted to the company can scarcely be called a monopoly, because it is doubtful if the city could have induced any company to undertake the responsibility of furnishing the city without at least a guarantee of some protection, not against competition, but against annoyances from irresponsible companies whose existence would pass away on the payment of a price.

The Water Works Company undertakes to perform a function of municipal government, and the city, which owns shares in the company and otherwise interested, pecuniary, is represented on the Board of Directors. The Water Works company is therefore a public corporation, established and created by the State to do and perform a public work, for the benefit of a political subdivision of the State. It is not, therefore, a monopoly created for private advantages.

We therefore are not impressed with the statement made by counsel that the price paid by the city for her water supply is a disguised donation. Had it even a semblance of such we would not hesitate to say that it was corrupt and extravagant legislation on the part of the City Council that authorized the Mayor to make the contract, and as such

beyond the legitimate object and purpose of municipal government, and within the rule expressed in Handy vs. City of New Orleans referred to.

We conclude that Act 56 of 1884 does not violate the constitution of the State, and that Ordinance 909, passed by the City Council in pursuance of said act, is a valid ordinance, and that the contract made between the city of New Orleans and the Water Works Company in pursuance of the powers vested in said city by its present charter, and by said Act 56 of 1884, and said ordinance, dated the 3rd day of October, 1884; and act passed before J. D. Taylor, notary public, on said day, is a legal and valid contract.

It is therefore ordered and adjudged and decreed that the judgment appealed from be avoided and reversed and annulled, and it is now ordered that plaintiffs' demand be rejected, the injuction issued herein dissolved and set aside, and the plaintiffs, taxpayers, pay costs of both courts.

---

## CONCURRING OPINION.

POCHÉ, J.    Under my understanding of the pleadings, the vital issues in this case involve the discussion of the legal effect of the judgment of this court, in the case of New Orleans vs. Waterworks Company, 36 Ann. 432, on the contract between the city and the company, under date of October 3, 1884 ; on ordinance 909, in obedience to which the contract was entered into, and on Act 56 of the Legislature of 1884, on which the ordinance was predicated ; and finally the alleged unconstitutionality of that act of the Legislature.

The main contention on the first branch of the discussion is that the judgment in question was a bar by estoppel of *res judicata* to the execution of the contract between the city and the Waterworks Company herein sought to be annulled and set aside, and incidentally to the operation of Act 56, which is invoked as authority for the contract.

Without yielding, but adhering to, the views expressed in my dissenting opinion in the case reported in the 36th of Annuals, p. 432, I fully recognize the effect of the judgment rendered by the majority of the court in that cause ; and hence I do not propose, as duty enjoins me, to ignore or avoid its absolute authority.

From the pleadings in that case it appears that the action of the city was simply and exclusively to recover its taxes for the year 1881, from the Waterworks Company, without any reference to the contract contained in section 11 of act 33 of 1877, or to any contractual relations existing between the parties to the suit.

The prayer of the petition reads : " Wherefore petitioner prays that the New Orleans Waterworks Company, for account of its shareholders, be duly cited to answer this petition, and after due course of law that defendant be condemned to pay petitioner the sum of $11,484 87, with ten per cent per annum interest from March 31, 1881, till paid, with lien privilege and right of pledge on the property herein described," etc.

For defense the company urged its exemption from municipal taxa tion, under the provisions of act 33 of 1877, and in case it should be held liable for the taxes claimed, it pleaded in reconvention the value of the water furnished to the city during the year for which the taxes were sought to be enforced.

The prayer of the amended answer was in the following words :

"Wherefore this respondent waiving no part of their original answer, except as hereby amended, prays that it have judgment in its favor, declaring valid and enforcing said exemption from the taxes of the city of New Orleans of 1881, in this suit sought to be recovered, and reject- ing plaintiff's demand, and if this be refused, then that respondent have judgment condemning the city of New Orleans to pay unto it the sum of $40,281 87, with legal interest from December 31, 1881," etc.

The judgment of the lower court was in favor of the city for $11,484 87, and in favor of the company for $40,281 87, and interests.

The decree of this court was as follows :

"It is therefore ordered adjudged and decreed, that the judgment appealed from be amended by reducing the principal of the amount allowed defendant on its reconventional demand from $40,281 87 to $11,484 87, and that, as thus amended, the same be now affirmed, de- fendant to pay costs of this appeal."

As grounds for its decree, the court held in substance that the exemp- tion from taxation provided for in the act of 1877 was null, and " that to the extent that this subjection to taxation destroys or impairs the consideration upon which rests the contract of the defendant to supply free water to the city, defendant is entitled to relief, but to that extent only."

From the consideration of these premises it must appear very clearly that the court, in its decision, was dealing with a well defined and re- stricted issue, which it disposed of by interpreting the contested contract as it stood at the time, and that the court did not, as it could not, at- tempt to fix the contract for the future and for all time to come. Such a pretention would have involved the court into judicial legislation of the most reprehensible character.

While the judgment thus rendered could not have been pleaded tech-

nically as *res judicata* in a suit between the same parties for taxes of a subsequent year, met by the defense of exemption under the charter of the company, it is undeniable, under well established jurisprudence, that the defense could have been successfully met by the plea of estoppel by *res judicata*, predicated on the decision now under discussion, and that the result would have been a similar judgment, allowing the city its taxes in the amount according to the assessment and the rate of taxes for that particular year, and allowing a judgment in reconvention and for the same amount to the defendant company.

Hence it follows that if the company was before the court in this case seeking to enforce the provisions of the contract created by act 33 of 1877, it would be amenable to the same plea. But is that the case before us? By no means. From plaintiffs' own pleadings it appears that since the rendition of the judgment in question, a new contract has been entered into between the city and the company, touching the supply of water by the latter to the city, and the very object of this action is to annul the contract, on the ground of its alleged illegality.

Assimilating this suit to an action by the company for the enforcement of its contract, which is correct, plaintiffs contend that the previous judgment of this court is a bar by estoppel of *res judicata* to the right of the company " to recover a judgment for the full value of its water supply, irrespective of the amount of taxes;" or in other words to seek judicial enforcement of the new contract executed in October, 1884.

At the incipiency of this litigation, the city was in fact and in law a party-defendant. Hence the suit did not embrace the same parties, either in fact or in the same character and capacity. But in the progress of the litigation the city shifted her position, and now she has practically made herself a party-plaintiff, and it may be conceded that the parties are the same in the two suits. But the cause of action and the subject matter are not the same.

In the previous suit the subject matter of the litigation was the contract created for the parties, by the act of 1877 ; in the present case the subject matter is the contract made by the parties for themselves, on the 3rd of October, 1884, and which had been voluntarily executed by both from that day, at least up to the date that the city shifted her position.

In the previous suit the cause of action on the part of the city was the enforcement of her taxes, and on the part of the company, its alleged exemption from taxation under the contract as then existing, or in the alternative, the payment of the value of the water supplied to the city during the year for which the taxes were claimed. In the present case the cause of action on the part of plaintiffs is the alleged nullity of the

contract of October 3, 1884. And the defense rests on its alleged validity and binding force. And in this case the question of taxation or exemption has entirely ceased to be a factor.

If the suit in the case of the 36th Annual had been between natural persons, involving the construction of an existing contract between them, and had resulted in a judgment annulling or materially modifying the contract, there certainly could have existed no legal impediment in the way of the same parties to have made a new contract on the same subject-matter. Now, if subsequent litigation had arisen between the same parties touching the construction or validity of the new contract executed by them, it is surely as clear that neither of them could have been met by a plea in bar of estoppel by *res judicata*, as to matters in the new contract not discussed or judicially determined in the previous litigation between the same parties.

I have taken the pains to examine the authorities relied on in support of the application of the plea of estoppel by *res judicata* to the defense urged in the present case, but I have found none which militate against the views which I have hereinabove expressed. They all tend to establish the familiar principle that a question once judicially determined, will estop the further agitation between the same parties of the same question ; but they do not extend the rule to the point herein contended for by plaintiffs.

In our jurisprudence the rule has been promulgated thus :

"It matters not under what form, whether by petition, exception, rule or intervention, the question be presented, whenever the same question recurs between the same parties, even under a different form of procedure, the exception of *res judicata* estops." Plicque vs. Peret, 19 La. 318 ; Sewell vs. Scott, 35 Ann. 553.

The main reliance seems to be in the case of Beloit vs. Morgan, 7 Wall. 621.

On that point the court said :

"On the 9th of January, 1861, the appellee recovered a judgment at law against the appellant upon another portion of these securities, though not the same with those in question in this case. The parties were identical, and the title involved was the same. All obligations taken in this case might have been taken in that. The judgment of the court could have been invoked upon each of them, and if it were adverse to the appellant, he might have brought the decision here for review. The court had full jurisdiction over the parties and the subject. Under such circumstances, a judgment is conclusive not only as to the *res* of that case, but as to all other litigation between the same parties

touching the same *subject-matter*, though the *res* may be different."
(Italics are mine.)

It takes no effort to show that the present case entirely lacks one of
the essential elements: the same *subject-matter*, which is necessary to
support the plea.

The same remark applies to all the cases which I have examined, and
particularly to those which are the most in point. 7 Wall. 82 ; Aurora
vs. West. 39 Ann. 690 ; Adams vs. Board, 34 Ann. 815 ; Herroman vs.
Institute (and eight Louisiana cases cited in the last decision).

No language used in the decision under discussion, either in the decree
or elsewhere, can justify the inference that under its effect, the city was
compelled to thereafter exact taxes from the Water Works Company, or
in other words that she was thereby coerced to abide by the letter of
that decision.

To ascertain the scope and legal effect of a judgment of the Supreme
Court, reference must be made to the decree whose terms must predom-
inate as the safest guide. "The decretal part of a judgment rendered
by the Supreme Court, and not the opinion or the reasons afford the
proper test to ascertain the matters which become *res adjudicatæ* under
the decree." Succession of Hoggate 36, Ann. 327.   Plicque vs. Peret, 19
La. 324.

It is conceded by plaintiff's that the city could have given her tax
receipts to the company in exchange for the latter's receipts for water
supply.   Hence it follows that the city could have entered into a con-
tract different in some terms from the previous contract as interpreted
by this court.   Hence I conclude that the judgment in that case was not
an absolute bar to the contract now sued on .   And the inference is fairly
deducible from the whole contention that Plaintiff's would not have
complained if the contract, which they resist, had contained the terms
fixing the price for the annual supply of water at some $21,000, which is
the average of the annual taxes paid by the company since 1884.   I
therefore feel convinced that the pith of the complaint is levelled at the
axtravagance of the contract more than at the power of the city to make
the same.

But conceding for the sake of argument that the decision was a legal
impediment to the city's action, without special legislative mandate ;
that authority is not lacking, because it flows directly from the provi
sions of Act No. 56, of 1884.

It surely cannot be seriously urged that the legislature is stripped of
its power to authorize a contract to have effect in the future, by a judi-
cial interpretation of a contract, which at the time had reference to the

present and to the past only. A very large proportion of the legislation in all the States, is prompted by the decison of courts, and is intended to remedy some mischief pointed out by, or resulting from, the utterances of courts of the country.

Examples are indeed too numerous to warrant an enumeration of such instances. Now in dealing with the subject in hand the legislature must have been impressed with the thought that, through her action, the city had been instrumental in procuring a judicial declaration of the partial failure of the considerations of a contract made by the law-making power itself.

The city's demand for taxes was the first attempt made against the autonomy of the contract as framed by the General Assembly, and the judgment of this court operated the first breach into it. The judiciary power interposed then no objection to the right of the city to ask a change or a modification of the solemn contract emanating from legislative will, and the judiciary cannot now consistently abridge the unlimited power of the Legislature to provide a mode to mend the breach.

The law-maker had full warrant to consider that the contract which he had made for the parties came out of the hands of this court in a maimed and mutilated condition.

As a result of the judgment rendered, the Waterworks Company was held liable for taxes exigible in cash without the right of compensating therefor the value of its water supplied for the uses of the city.

All it could obtain in satisfaction of its annual water supply was a judgment not executory, and not collectable within any fixed or determined length of time.

Avowedly the judgment did not do absolute, even handed justice. In the leading opinion, which was unanimous when rendered, it was said: "But for the nature of the city's claim being for taxes, compensation would preserve the exact *status quo*."

"We regret that the city's financial condition prevents the judgment against her from being the immediate equivalent."

On the application for rehearing, the opinion of the majority contains the following significant language:

"Contingencies of this kind were foreseen, but the principle was stamped in the act that however unequal arithmetically these two sums, might be, they should be equal in the contemplation of the statute, and that the one should be the exact equivalent of the other." * * * "It would be perfect equity that the one should compensate the other, but the law interposes and declares a tax not compensable."

These considerations naturally had great weight on the legislative

mind, and they doubtless prompted the enactment of act No. 56 of 1884, whose mission was to remove the legal interposition to the administration of absolute justice, and to restore "perfect equity" between the parties. A better and purer motive of legislation could hardly be presented.

Hence the object of the statute, as expressed in the title, was: "To provide the supply of water to the city of New Orleans by the New Orleans Waterworks Company, in cases of municipal taxation of said company; to authorize provision to be made for the payment of water supplied and to be supplied; to provide for obtaining a supply of clear or filtered water by the New Orleans Waterworks, and to enable the city of New Orleans to contract for the same; to regulate the payment of taxes imposed on said company contrary to the exemption given in its charter, and to put into effect section 11 of act 33 of acts of 1877, E. S., in instances of refusing, or contrary to, the exemption therein."

An examination of the provisions contained in the body of the act must satisfy the legal mind that they each and all tend directly and exclusively to the primary object as foreshadowed in the title of the statute, which is practically to restore the "perfect equity" between the parties, which had been disturbed by the city's attack on the contract made by the Legislature for the parties in the act of 1877, and by the judgment of this court rendered in that case.

The act does not purport to amend or modify the charter of the Waterworks Company, or to provide for, or confer any advantage in favor of the company. The latter's power to enter into a contract with the city of New Orleans or any other person for water-supply derives from its charter, and it did not need any enabling legislation to that end. But it was considered that the city was in need of legislative permission or authority to mend the breach which she had made or procured to be made in the original contract, hence the authority is therein given. But the mandate was not compulsory; it was simply optional and permissive.

Under its authority the city was at full liberty to return to the original contract, by ceasing to exact municipal taxes from the company, or to do what is suggested by plaintiffs themselves, who say:

"All that the city had to do to make the equity perfect, was to pass an ordinance directing the Treasurer annually to receive the water bill of the Waterworks in payment of its tax bill."

And she was also given the option, in case she chose to enforce payment of her taxes, to obtain her water supply by paying therefor in another mode.

In passing ordinance No. 909, the city elected to adopt the last mentioned option, and the contract, which she now seeks to rescind, was the result.

The foregoing analysis of the object and provisions of act 56 is of itself an answer to all the objections urged against it on constitutional grounds.

As it is shown to embrace but one object, it does not violate article 29 of the constitution, as charged by plaintiffs.

As it gives an option to the City of New Orleans to abide by the original contract for its water supply, or otherwise to provide for the payment thereof, it is not in conflict with Article 45, which forbids the General Assembly " to authorize any parish or municipal authority to grant any *extra* compensation fee or allowance to any public officer, servant or contractor." * * * (Italics are mine.)

Nor does it violate paragraph 13, of Article 46, which prohibits the General Assembly from passing any local or special law. * * "Creating corporations, or amending, renewing, extending or explaining the charter thereof;" as already shown, the statute does not purport in the least to amend, renew or explain the charter of the Waterworks Company. Its only reference to the charter is to authorize, or almost to invite, the city to abide by the terms of its contract as therein stipulated. It must be considered as a local or special law concerning a corporation, but as New Orleans is that corporation, the prohibition does not apply under the terms of the *proviso* contained in the paragraph which says: "provided this shall not apply to the corporation of the City of New Orleans." * * * The only amendment ever made to the charter of the defendant company as such, resulted from the judgment of this court, in so far as it modified the provisions of Act 33, of 1877, Section 11, which was *the contract* regulating the water supply to the city. In passing Act 56, of 1884, the legislature dealt with the charter as it found it then, altered from its original form, and its avowed object was to authorize the city, at its option, to do such acts as were necessary to restore the *status quo* of the parties, disturbed as above set forth. The interpretation placed on the statute by the parties to the contract which it authorizes is not the criterion of its constitutionality. To test the constitutionality of a law by the mode in which the act is executed, is surely a novel canon of construction which courts will be slow to adopt.

As the statute does not propose to release the defendant company " from any indebtedness, liability or obligation to this State, or to any parish or municipal corporation therein," it is not amenable to the charge of being violative of Article 57, of the constitution. It on the

contrary seeks to enforce the obligation of the company to supply the city with water either for exemption from taxation, or for adequate compensation otherwise provided for.

It is finally charged that the statute is violative of Article 234 which reads :

" The General Assembly shall not remit the forfeiture of the charter of any corporation now existing, nor renew, alter or amend the same, nor pass any general or special law for the benefit of such corporation, except on the condition that such corporation shall thereafter hold its charter subject to the provisions of this constitution."

As the statute contains no reference to the charter of the Waterworks Company, coupled with the purpose of renewing, altering or amending the same, it is very clear that the company is not in a condition to be affected by any of the terms of the article.

I therefore conclude that the statute under discussion is constitutional, just and proper, and that under its provisions the city had ample authority to enter into a contract with the defendant company for its water supply.

Having reached that conclusion, the court is powerless to control the city as to the details of the contract.

This proposition is fully sustained by the reasons, and by the authorities contained in the opinion prepared by Mr. Justice McEnery.

The price for water supply agreed upon may be excessive, but the contract is not attacked as fraudulent or inspired by corrupt motives, and it is not in fairness amenable to the charge of being a donation, or to the charge of being over two millions of dollars for water supplied in forty-three years instead of what it should reasonably have been.

It is in proof that the average amount of taxes paid annually to the city by the company is $21,000, and that she receives an annual average, as dividends for her stock in the company, about $14,000—footing up her receipts from that source at $35,000 annually. Deducting that sum from the cost of water under the contract, $68,340, it appears that the disbursements of the city for her water supply would be $33,340 each year, a sum much less than the value of a year's water supply as found by the district judge in the suit of the 36th Annual. It also appears that under the present contract the water supply of the city would cost annually more than $50,000 less than is shown by the record to have cost her when she owned and operated the works herself.

The contract is therefore not fraudulent or outrageously onerous and unreasonable so as to warrant judicial interference with its continued existence or execution.

I therefore concur in the decree herein made and to be rendered.

Conery, Jr. et al. vs. Water Works Company et als.

## DISSENTING OPINION.

BERMUDEZ, C. J.    This suit is brought by citizens and taxpayers for the avowed purpose of preventing an increase of the burden of taxation, by an unauthorized and illegal disbursement of a fabulous sum of money by the city of New Orleans, in favor of the Waterworks Company.

They claim that, in a controversy between those two corporations, in which each had a demand against the other, the city claiming taxes from the company, and the company claiming the value of water supplied to the city, for the year 1881, this court interpreted the contract between them, under act 33 of 1877, and declared that the company had no right to recover from the city, in any year, any sum for the water supply which it was bound to furnish, greater than the amount of city taxes for that year; and they complain that, in derogation of the judgment thus rendered, an act, No. 56 of 1884, was passed by the Legislature, under which a contract was entered into by the city of New Orleans and the Waterworks Company, the effect of which would be to have the city of New Orleans to pay to the company, as the value of the water furnished, an enormous amount, over and above that which, under the legislative contract of 1877, as interpreted by this court, it would have otherwise to pay.

They charge that the act of the Legislature is unconstitutional, and that the contract under it is illegal and void; and that, in the absence of such act, the city would be powerless to enter into such an agreement.

The defence set up, naturally, is the constitutionality of the act, and the validity of the contract under it or without it.

The city of New Orleans is a party to these proceedings.

There is no plea of *res judicata* filed, to operate as such in this suit. The plaintiffs and the city claim simply, that the judgment in question could not be annulled, abandoned and disregarded, so as to justify the act and contract attacked.

In the suit mentioned, the city claimed taxes as due for 1881.    The defence was that, under the terms of its charter, in consideration of its supplying the city with water, all the property of the company which would otherwise be liable to taxation, had been *exempted* formally from municipal taxation, the condition having been fulfilled; but that if the exemption was unconstitutional, the contract was broken, lacked consideration, and became null, and that, if the city has the right to demand her taxes, the company is entitled to exact payment of the value of the water it furnished the city.

After a consideration of the facts and of the law having a bearing on the controversy, the court in a main and unanimous opinion which remained undisturbed, notwithstanding an application for a rehearing, reached the conclusion, for the reasons assigned, that the city could recover her taxes, and the company the value of the water supplied, provided it did not exceed the amount of the taxes.

It is not essential for the purpose of the present controversy, to consider the language used in both opinions, as, whatever it be, it is binding on the parties, only so far as it may conduce to the justification of the judgment rendered, and is not absolutely exclusive of other determining motives tending in the same direction.

A review of the whole matter irresistibly impresses the mind that the judgment rendered is made to rest on the consideration, plausible, just, honest and proper, that in the legislative intent, the price or value of the water furnished was to fluctuate according to circumstances, but so as never to exceed the amount of the taxes which might become due on the property of the company for any subsequent year whatever.

That judgment settled forever the question of the respective liability of both corporations, the one for the water supplied, the other for the taxes demandable. Its effect, as is that of all judgments, was to close the door, for all time, to those litigants, on the subject of such reciprocal liability, the one to the other.

The moment that judgment was rendered it became the property of each party who then acquired the right of using it as an effectual shield for protection against any demand for more than it allowed to each party.

It was not a judgment intended merely to settle the question of amounts due for 1881, for taxes and water supply, but one designed to establish firmly, for the future, during the term of existence of the company, that, in no case, would it ever claim from the city for water supply any amount in excess of that which the city would have the right to demand for taxes due her.

The title of ownership which vested to that judgment in the two corporations, was one which could not be divested, unless by a mutual legal consent; but, as such consent was a legal impossibility, it follows that the judgment which was thus rendered has never ceased to have its binding force and effect, and that it is fatally destructive of both the act of 1884 and of the contract under it.

It is a recognized principle that, although parties may renounce the benefit of the authority of the thing adjudged, the courts have the prerogative, when such renunciation has taken place, and after ascertaining

that the judgment abandoned would be conclusive of the new litigation before them, to refuse to try the issue *de novo*.

*Interest reipublicæ, ut sit finis litium.*

It is perfectly true that the city of New Orleans is a State functionary, created by the sovereign, vested with necessary inherent and other expressly delegated rights, powers and faculties, but it does not follow that, on that account, the sovereign can divest her of her property, appropriate it to his own use, or give it away, or impair the obligations of contracts in her favor.

From that standpoint, the Legislature was incompetent to deprive the city of her right of ownership to the judgment rendered in her favor, whereby she was to be relieved from all amount exceeding the taxes due her by the Waterworks Company, and which she might have had to pay, had not the judgment expounding the contract been rendered.

Surely, if the city could not, with legislative sanction, enter validly into the contract assailed, it was *ultra vires* for her to do so, *proprio motu*, under the circumstances of this case, for the plain reason that she was thereby abdicating arbitrarily advantageous privileges and rights, belonging to the public, over which she had no control, replacing them by clearly ruinous and crushing obligations.

Those considerations suffice in my opinion to affirm the finding of the lower court refusing to apply, or enforce the act attacked, and avoiding the contract leveled against.

---

## DISSENTING OPINION.

FENNER, J. This is a suit by taxpayers to procure the judicial annulment of a contract passed between the authorities of the city of New Orleans and the New Orleans Waterworks Company, by which the city was obligated to pay $68,340 per annum for her water supply for public purposes, during the period of forty-three years from the date of the contract.

The grounds of nullity alleged are that the contract was fraudulent, *ultra vires* and null, as involving a practical donation in disguise to the company, by payment to it of $68,340 per annum for a water supply which, under its charter contract, the company was legally bound to furnish for a sum not exceeding the annual taxes levied on it by the city. When this suit was brought, the city, being then represented by the same authorities which passed the contract, joined the defendants; but the personel of the city administration having subsequently changed, the city now joins the plaintiffs in invoking the nullity of the contract.

The New Orleans Waterworks Company was incorporated by an act of the General Assembly of the State, No. 33 of 1877, amended before acceptance by Act 43 of 1878.

The charter conferred upon the corporation extensive privileges, including the exclusive privilege, or monopoly, of supplying the city of New Orleans and its inhabitants with water, by means of pipes and conduits, for the term of fifty years from the passage of the act.

The 11th section of the charter (as amended) is as follows:

"That the city of New Orleans shall be allowed to use water from the pipes and plugs of said company now laid, or hereafter to be laid, free of any charge, for the extinguishment of fires, cleansing the streets, and for the use of all public buildings, public markets and charitable institutions; and that the said company shall place, free of any charge whatever, two hydrants of the most improved construction, in front of each square where a main pipe shall be laid, at a suitable distance from each other, from which a sufficient quantity of water may be conveniently drawn for the extinguishment of fires, for watering the streets and cleansing the gutters, and for any other public purpose; that on the squares which do not front the river, the hydrants shall be placed on opposite sides of the streets, at an equal distance from each other and the corners. It shall be the duty of said company, whenever main pipes shall be laid, to supply water for all purposes herein mentioned at all times during the continuance of this charter; and in consideration thereof the franchises and property of said New Orleans Waterworks Company, used in accordance with this act, shall be exempt from taxation, municipal and parochial."

The act was duly accepted by the city and by the Waterworks Company, and was executed without complaint or question for several years.

Under the State constitution of 1868, in force at the date of the charter, it was repeatedly held by this court that the legislative department could not validly exempt any property from taxation, either by commutation or in any other manner, unless the property was "actually used for church, school or charitable purposes." 28 Ann. 756; 31 Ann. 440, 827; 27 Ann. 376, 646, 648; 28 Ann. 498, 512; 31 Ann. 292, 637, 519.

Availing themselves of these adjudications, the city authorities then in power undertook, in 1881, to levy taxes on the property of the Waterworks Company, and brought suit to collect said taxes amounting to the sum of $11,484 87. In that suit the Waterworks Company answered, pleading the statutory exemption as a bar to the city's action, averring that the exemption was the sole consideration of its obligation to furnish free water to the city; and that, if the exemption was denied, it

was entitled to recover from the city the value of the water supplied during the year, viz: the sum of $40,000, for which it prayed judgment in reconvention.

In the court of first instance, there was judgment in favor of the city for the tax, and in favor of the Waterworks Company for the whole amount of its reconventional demand.

The case was then appealed to this, and our decision therein is reported in 36th Ann. 432.

There was and could be no doubt as to the nullity of the legislative exemption from taxation. As to that even the dissenting judge declared that there could be "but one opinion." It had, indeed, been placed beyond controversy under the doctrine of *stare decisis*.

The fight was on the question of the effect of that nullity upon the obligation of the defendant to furnish free water.

To place beyond dispute the nature of the question involved, and the sharpness and clearness with which it was presented, it is well to quote from the opinions in the case. In the leading opinion it is said: "The position of the defendant is that the exemption from taxation was the sole consideration of defendant's obligation to furnish the city with free water, and that when the city elected to claim its taxes, it released the defendant from its entire obligation to furnish free water, and became bound to pay for all the water used, even though exceeding, as it does, three-fold the taxes."

Another opinion was rendered on an application for rehearing, in which it was said: "The argument resolves itself into the single proposition, i. e., that the 11th section of the act distinctly and in terms declares the water supply to be the consideration of the exemption from taxation, which declaration the court can neither enlarge, restrict, nor otherwise alter, and the inevitable consequence is that the exemption having become inoperative, there can no longer be a free water supply of any quantity whatever." This was the proposition discussed and overruled.

On the application for rehearing a dissenting opinion was read, in which it was said: "There is, and can be, but one opinion as to the nullity of the exemption from taxation * * ; but the very reasoning which leads to that conclusion should, in my opinion, carry with it a declaration a complete nullity of the contract of which the tax exemption was one of the considerations, unless in can be made to appear that the act contemplates or provides for other and distinct considerations for the stipulated free supply of water." The learned judge, after further discussion, says: "The (11th) section must have been intended to and did,

beyond doubt, create a complete and independent contract between the city and the company. The contract as thus shaped and created, has reference to no other portion of the act, which is complete as an act without the contract contained in the section—as complete as the contract itself stands without reference to any or to all of the provisions of the act. Hence follows, in my opinion, the irresistible conclusion that the consideration furnished by one of the parties, having failed, the entire contract must fall."

These quotations suffice to show the question directly involved in that case, that it was a necessary and the main question, and that it was a question propounded by the Waterworks Company itself as the basis of its reconventional demand.

Having thus exhibited the *rem decidendam*, let us next inquire what were the *res decisæ*.

Abstaining from further quotations, a reference to the decisions themselves will show, beyond doubt, that the court held and decided as follows:

1st. That the exeemption of the Waterworks from taxation was unconstitutional.

2nd. That this exemption was not the sole consideration of the obligation to furnish free water, but that additional considerations existed in all the valuable privileges conferred by the act.

3rd. That the failure of the stipulated exemption from taxation was, therefore, only a partial failure of the consideration for the water supply.

4th. That the extent of the failure of the consideration was exactly the amount of the taxes levied by the city.

5th. That the city could not be held to pay a greater amount for her water supply for the year than the amount of the taxes collected from the Waterworks in that year.

6th. (On rehearing.) That all the privileges granted by the charter, including the exemption from taxation, being considerations on one side for the free water supply on the other, and only a part of one consideration being withdrawn, equity required that only an exact equivalent should be withdrawn on the other.

Hence, while giving the city judgment for her taxes, we at the same time gave judgment in favor of the company against the city for precisely the same amount in payment for water, saying, "it would be perfect equity that the one judgment should compensate the other, but the law interposes and declares taxes not compensable."

Every proposition above stated was necessarily involved in the issues between the parties, and the decision thereof could not have been reached without considering and determining them.

A construction of this decision, which confines attention to the particular claims and counter-claims then involved, and ignores the construction of the contract then authoritatively made, is narrow and unwarranted; and, under the plain terms of the decision, it is extraordinary that any one should claim that it annulled and wiped out the entire section 11, which was the very thing claimed by the company, and expressly denied by the court.

It is impossible to formulate any expression of the doctrine of estoppel by *res judicata* sustained by any judicial or doctrinal authority, which would not forever bar the city of New Orleans, the New Orleans Waterworks Company, and their privies, from questioning the conclusiveness of this decision and from ever again agitating the questions therein decided.

All systems of law and all judges and jurists are unanimous in the firm maintenance of this estoppel as essential to any reasonable or consistent administration of justice.

It was formulated in the Digest of Justinian, where it is written, *Res adjudicata pro veritate accipitur*, and again, *Exceptionem res judicatæ obstare quoties eadem quæstio inter easdem personas revocatur*.

It was imbedded in the common law of England and has been sacredly respected by this court as well as by the Supreme Courts of the United States and of the other States.

The estoppel of *res judicata* operates in two ways: 1st. If the second suit is based on the same cause of action, is between the same parties, and is for the same *object* or *thing*, then the first judgment is a conclusive bar to the whole suit. 2nd. But where the *res* or thing claimed is different, the cause of action and parties being the same, the first judgment is not a bar to the suit, but, none the less, it operates as a conclusive estoppel as to all questions of law and fact which were necessarily involved and determined in the former controversy.

From a mass of authorities sustaining the latter principle, the following may be referred to: Aurora City vs. West, 7 Wall. 96; Cromwell vs. County of Sac, 94 U. S. 353; Doty vs. Brown, 4 Comstock 71; Outram vs. Morewood, 3 East. 346; Burt vs. Sternburg, 4 Cowen, 559; Bouchard vs. Dias, 3 Denio, 243; Gardner vs. Buckbee, 3 Cowen, 120; Lumber Co. vs. Buchtel. 101 U. S. 638; Gould vs. Railroad Co., 91 U. S. 526; Beloit vs. Morgan, 7 Wall. 623; Merriam vs. Whittemore, 5 Gray, 317; Norton vs. Huxley, 13 Gray, 290; Burlen vs. Shannon, 99 Mass.

203; Tams vs. Lewis, 42 Penn. St. 402; Chamberlain vs. Gaillard, 26 Ala. 504; Perkins vs. Walker, 19 Vt. 144; Hayes vs. Gudykunst, 11 Penn. St. 221; Peterson vs. Lothrop, 34 Penn. St. 223; Jackson vs. Lodge, 36 Cal. 28; Danaher vs. Prentiss, 22 Wis. 311; Barrs vs. Jackson, 1 Younge and Col. C. C. 585; Caujolle vs. Ferrié, 13 Wall. 469.

The estoppel applies, whether the issue was one of law or of fact. Bouchard vs. Dias, 3 Denio, 243; Ferrer's Case, 6 Coke, 7 Ann.; Aurora City vs. West, 7 Wall. 84.

The rule of the civil law is the same. Thévenin et al. vs. Dufour et al., Sirey 31, p. 41; St. Léonnard et al. vs. Bal J. du P., 1843, vol. 2, p. 247; Gleize vs. Héritiers Gleize, J. du P., 1859, p. 514; Cass, 13 fév. 1860 (Giudicelli), Sirey, vol. 60, 1, 545; Cass, 26 août, 1873 (Commune de Chaucevigney), Sirey, vol. 74, 1, 294.

After discussing all the authorities, the compilers of Smith's leading cases announce the rule as follows: "It results from the authorities that an adjudication by a competent court is conclusive, not only in the proceedings in which it is announced, but in every other where the right or title is the same, although the cause of action (meaning, of course, the *res*) is different. 2nd Smith's Lead. C. 943.

Lord Kenyon laid down the rule as follows: " If an action be brought, and the merits of a question be discussed bewteen the parties, and a final judgment, be obtained, the parties are concluded and cannot canvass the same question again in another action, although, perhaps, some objection might have been urged upon the first trial, which could have led to a different judgment." Greathead vs. Bromley, 7 T. R. 456.

Mr. Bigelow makes the following statement of the rule: "A point once adjudicated by a court of competent jurisdiction may be relied on as an estoppel in any subsequent collateral suit in the same or any any other court, when either party, or the privies of either, allege anything inconsistent with it, and this, too, whether the subsequent suit be on the same or another cause of action." Bigelow on Est. p. 45.

The foregoing was very recently quoted and approved by this court. Adams vs. Board, 39 Ann. 693.

Mr. Wells, in his work on *res adjudicata*, after an exhaustive discussion of authority, says: " By the overwhelming weight of authority, the rule is, that while the issue must be precisely the same, yet the object, subject and causes of action do not require to be identical; so that if the precise issue of the former suit, necessary to the determination of the controversy therein, be again brought between the parties in the latter action, even though collaterally, yet relevantly and mate-

rially, the former decision .must conclude the matter from further dispute." Wells' Res. Ad. sec. 304.

The Supreme Court of the United States sustains the same doctrine, saying: "The parties were identical and the title involved was the the same. * * The court had full jurisdiction over the parties and the subject. Under such circumstances a judgment is conclusive, not only as the *res* of that case, but as to all further litigation between the same parties touching the same subject matter, though the *res* itself may be different." Beloit vs. Morgan, 7 Wall. 622.

We upheld the same doctrine very emphatically in Heroman vs. Institute, 34 Ann, 815, saying: "The estoppel extends to every material allegation or statement, which, having been made on one side, denied on the other, was at issue in the cause and determined therein."

Further quotations from authorities are needless, and those made were perhaps superfluous.

They place it beyond dispute, that the decision in the 36th Ann. case forever concluded and estopped the parties thereto from again agitating the question therein determined in any subsequent action. In any subsequent suit by the city for the taxes of succeding years, the Waterworks would have been estopped to set up the exemption of its charter. In any subsequent suit by the Waterworks Company for the value of water furnished, it would have been estopped from claiming more than the amount of the taxes levied during the year in which the water was supplied, and the city would have been legally estopped to deny that she owed the value of the amount of such taxes.

Thus the legal *status* of the rights and obligations of the parties under the legislative contract embodied in the charter of the Waterworks Company was definitely and irrevocably fixed. The city was irrefragably entitled to receive annually the supply of water stipulated in the act, and was bound to pay therefor precisely the amount of taxes levied by it on the property of the company during the same year; and not a cent more could be claimed by the company.

A great part of the majority opinions is taken up with arguments, to show that the plea of *res judicata* does not operate as a bar to the present suit. I do not understand any one to contend that it so operates. The principle of *res judicata* is invoked, not as a plea in bar in the present action, but as showing that the decision in 36 Ann. would have operated as *res judicata* in any subsequent suit between the parties touching the water supply and taxes for any subsequent year, arising under the 11th section of the charter, and that it, therefore, settled irrevocably the rights and obligations of the parties under the charter. This. I under-

stand to be conceded, at least in the opinion of Mr. Justice Poché. And this being so, the question is whether the radical change in those rights and obligations operated by the contract assailed, is valid and within the power confided to the officers of the city government.

Let us now turn to the contract assailed in the instant suit.

In September, 1884, a contract was entered into between the Mayor of the city (acting in virtue of an ordinance passed by the City Council) and the New Orleans Waterworks Company, whereby, as a consideration for the water supply therein stipulated, the city "engages and contracts to pay unto said company annually the sum of sixty, dollars for each and every fire-plug, fire-hydrant and fire-well, of which there are now 1139, and which number shall ever be the least measure of the annual sum to be paid to said company; and to pay to said company annually sixty dollars for every additional hydrant, fire-well or fire-plug exceeding said sum of 1139, and hereafter attached to said mains or pipes." Thus it appears that the city bound itself to pay for its water supply the least sum of $68,340, annually, during the whole remaining term of the company's charter, or for about forty-three years.

It appears that the taxes paid by the company to the city were, in 1885, $20,619 37; in 1886, $22,093 59; in 1887, $20,113 60; in 1888, $21,405 78. Under the charter of the company, as interpreted by the court, these sums fixed the limits of the city's liability for the water supply for the respective years which the company was bound to furnish under its charter. Nothing indicates that the taxes will ever be greater, unless it results from the extension of the Waterworks, caused by the growth and expansion of the city, in which case the amount to be paid by the city for the necessary additional plugs and hydrants would correspondingly increase.

Thus we find that while the city was legally entitled to have her water supply under the charter for a price of about $20,000 *per annum*, this contract obliges her to pay a *minimum* price of $68,340 per annum for the water supply stipulated in this contract, being a difference of more than $20,000 for the whole term of the contract.

The first question that inevitably arises under the foregoing statement is: What is the difference between the water supply required by the charter and that stipulated in the ordinance and contract?

A comparison of the terms of the charter provisions with those of the ordinance and contract shows conclusively that there is no substantial difference in the obligations imposed on the company by the respective instruments—certainly none that could serve as the slightest support for the enormous excess of price.

The evidence shows, with equal conclusiveness, that the water actually supplied since the date of the contract has not materially differed, in quantity or quality, from the supply prior thereto.

No serious attempt is made to show any adequate or even approximate additional consideration for the immensely increased price. Indeed, the preamble of the ordinance conclusively shows that none such was contemplated or operated as an inducement to the contract. The preamble is as follows:

" WHEREAS, the city of New Orleans has been, and is, and will be unable to allow the New Orleans Waterworks Company the fifty years exemption from taxation, being the consideration for a free supply of water contemplated by section 11 of Act 33 of the acts of 1877, and the courts having decided that the exemption from municipal taxation granted in said act is not, and shall not be enjoyed, and *therefore, as is also decided, that the city must pay for the water supplied by said company,* and

" WHEREAS, it is best to arrange for a fixed annual price for said water supply, rather than leave the city liable to an annual demand, the amount of which cannot be known in advance, and from which the city cannot be relieved, but it is specially authorized and required to provide for the payment therefor, and

" WHEREAS, the said New Orleans Waterworks Company is willing to accept terms, arranging for a sum to be determined in advance of each year, and which amount can be readily and equitably fixed, *according to a mode adopted in other cities, by reference to the number of fire hydrants, fire plugs, or fire wells,* now numbering eleven hundred and thirty-nine (1139) in this city, therefore," etc.

In the teeth of the decision of this court, the ordinance rests exclusively on the false recital that the city was bound to pay the full value of the water supply, regardless of the amount of taxes, and the change in the terms of the prior contract is declared to be simply for the purpose of establishing a better mode of fixing the compensation.

The pretense that this ordinance was intended as authorizing a new contract, fixing an honest additional price for a fair additional consideration, has no foundation either in its terms or in the evidence in this case. By the effect of this contract, the Waterworks Company furnishes substantially the same supply of water which it was bound to furnish under the terms of its charter; it enjoys a perfect practical exemption from taxation, because the city is bound to furnish it, in advance, with the money to pay the taxes, and, in addition, the company receives a

contribution of about $2,000,000, payable in annual instalments of over $40,000 for forty-three years.

If this is not a disguised donation, what shall it be called, unless we choose to term it an undisguised donation; for, indeed, the garniture of contract in which it is quoted, is too flimsy and transparent to serve as a disguise.

It is vain to point to the provisions of the city charter, authorizing the city council to provide itself and its inhabitants with pure and whole-some water and to make contracts for such purpose. No one would be bold enough to contend that those powers cover donations of the money exacted from the taxpayers.

Equally vain is it to appeal to the discretion vested in the political authorities of the city to judge as to the advisability of contracts and the reasonableness of considerations.

A donation placed in the form of a contract cannot find protection under any degree of respect due to such pretended discretion.

But it is said that this contract is a compromise of the conflicting rights claimed respectively by the city and the company. It is not, and it does not pretend to be a compromise. There were no conflicting rights. The rights of the parties had been finally settled by the decree of this court, which had not even been appealed from, and which nothing shows the company intended or threatened to appeal from. The appeal taken since the institution of this suit is too late to affect the *status* of the case.

The last appeal of the company is to Act 56 of the General Assembly of 1884, passed after the decision rendered by this court.

That act is ambiguous in its terms and it is needless to discuss its pro-visions and its phraseology.

It either authorized this contract, or it did not. If it did not, there is an end of its pertinency.

If it did, it clearly violates the following article of the Constitution, viz: Article 45, which declares: "The General Assembly shall have no power to grant, or authorize any parish or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or *contractor*." And Article 57, which declares that "the General Assembly shall have no power to release or extinguish, or to authorize the releasing or extinguishing, *in whole or in part*, the indebtedness or *liability* of any corporation or individual to this State, or to any parish or municipal corporation thereof."

The applicability of these two articles is too patent to need comment.

If, under its charter, as interpreted by this court, the Water Works

Company was bound to furnish the water annually for a compensation not exceeding the amount of its taxes, how could the Legislature authorize the city to pay to such contractor an extra compensation of $45,000 per annum? And if such was the "liability" of the Water Works Company, how could it be released and extinguished by substituting therefor a different and vastly less onerous liability?

Moreover, if the act has this effect, it is clearly an amendment of the charter of the company, because it changes the whole effect and operation of section 11 thereof as interpreted by this court. This is a local and a special law, and the Constitution, Article 46, declares: "The General Assembly shall not pass any local or special law creating corporations or *amending*, renewing, extending or *explaining* the charter thereof."

If an act of the Legislature which has the effect of changing and radically diminishing the obligations imposed upon a corporation by its charter, is not, practically, an amendment or alteration of the charter, what would be such an amendment?

Finally, Article 234 of the Constitution declares: "The General Assembly shall not remit the forfeiture of the charter of any corporation now existing, or renew, *alter* or *amend* the same; *nor pass any law for the benefit of said corporation, except on the condition that said corporation shall thereafter hold its charter subject to the provisions of this Constitution.*"

The provisions last referred to are those which aim at monopolies and subject the rights of corporations absolutely to the police power of the State to be controlled thereby whenever deemed to infringe the "general well-being of the State."

The Water Works Company has never accepted this act, but has declined to accept it. It has contrived to obtain a most important and radical amendment and alteration of its charter rights and obligations, without subjecting itself to these provisions and without imperilling its monopoly.

Having never had the slightest ground of complaint except the loss of its exemption from city taxation, it has secured an indemnity for this loss, which converts it into an enormous gain, because the city not only pays to it in advance the money with which to pay its taxes, but adds an annual gift of $45,000 per annum in addition.

Exemption from taxation has no sentimental value — no *pretium affectionis* or *honoris*. It is a simple relief from the obligation to pay a certain amount of money. If the city had made provision to take the water bill in discharge of its taxes, or if it had appropriated and paid to the

company the amount of the taxes, with which to pay them, the charter right of the company would have stood *totus, teres atque rotundus,* without a shadow of infringement.

I have looked at this case from every point of view and confess my inability to discover any consideration of justice, equity or law to support this extraordinary contract.

I, therefore, dissent.